Edward Leon Guy III
Calle Volcán 1090
Playas de Tijuana, Jardines Seccion
Tijuana, B.C. C.P. 22504
(213) 232-7399 (U.S. Land)
elgiii58afterhours@gmail.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF OREGON**
**EUGENE DIVISION**

EDWARD LEON GUY III,

Plaintiff

v.

OREGON STATE UNIVERSITY; DR. DAMIEN WEAVER, PhD., Individually and in his official capacity; RONI SUE, Individually and in her official capacity; CAROL MILLIE, individually and in her official capacity; TIM JENSEN, Individually and in his official capacity; JADE SILVER, individually and in her official capacity; BRIAN HULTGREN, Individually and in his official capacity; PROF. EMILY DAVIS, Individually and in her official capacity.

Defendants

Case No. 6:26-cv-1114-AP

**SECOND AMENDED COMPLAINT FOR DAMAGES:**

1. 42 U.S.C. § 1983: First Amendment Retaliation;
2. 42 U.S.C. § 1983: Fourteenth Amendment Due Process Violation;
3. 42 U.S.C. § 1981: Race Discrimination;
4. Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d);
5. Age Discrimination Act of 1975 (42 U.S.C. §§ 6101-6107);
6. RS §659.850:Oregon Education Discrimination;
7. Breach of Contract;
8. Defamation Per Se;
9. Intentional Infliction of Emotional Distress;
10. Negligent Infliction of Emotional Distress;
11. Americans with Disabilities Act, Title II (42 U.S.C. § 12132);
12. 42 U.S.C. § 1983: Retaliation (SPAN 355 / EEOC).

Comes now Plaintiff with the following allegations:

## I. INTRODUCTION

**1.** This is a civil rights action arising from the racially discriminatory, retaliatory, and constitutionally deficient conduct of Oregon State University and its employees against Plaintiff Edward Leon Guy III, an Afro-descendant, 100% service-connected disabled United States Marine Corps veteran and non-traditional student enrolled at Oregon State University e-campus.

**2.** Defendant Dr. Damien Weaver unilaterally ejected Plaintiff from his course without warning, without due process, and without any formal proceeding — based on Plaintiff's use of period-accurate, culturally contextual language drawn directly from assigned course readings and the historical era depicted — the same language present in the texts assigned by Dr. Weaver himself.

**3.** Dr. Weaver took no similar action against non-Black students who used identical or more inflammatory language in the same discussion thread. Student Baylie Bucher, a non-Black student, opened her discussion post with the word "slut" — a direct quotation from Jamaica Kincaid's assigned story "Girl" — and received no warning, no criticism, and no threat of removal. Student Hugo Coffinieres fabricated quotations from an unassigned story, attributed false page numbers, and submitted academically dishonest work — and received no response from Dr. Weaver. Plaintiff's post, by contrast, was the most formally written in the class: zero first-person pronouns, zero contractions, and language drawn entirely from assigned texts. The only material difference between Plaintiff's treatment and that of his non-Black peers is race.

**4.** When Plaintiff asserted his legal rights, Dr. Weaver used that assertion as additional grounds for a pre-filed student misconduct report, characterizing Plaintiff's constitutionally protected legal notice as "intimidation." OSU's Equal Opportunity and Access office (EOA) then

dismissed Plaintiff's discrimination complaint without investigating the core disparate treatment issue.

**5.** Eleven days after filing the misconduct report against Plaintiff, on or about February 18, 2025, Dr. Weaver sent Plaintiff a separate email stating: "You did a great job with your commentary on the discussion board, as I expected you would." This email referred to the identical discussion post that Dr. Weaver had characterized as requiring a formal misconduct report. Dr. Weaver's own written statement — praising the post he had simultaneously reported as misconduct — demonstrates that his negative reaction to Plaintiff's discussion post was not grounded in the content of the post itself. A faculty member who genuinely believed a student's post reflected misogynistic conduct warranting a misconduct report would not, eleven days later, praise that same post in writing and express that the quality of the work was expected. Dr. Weaver's February 18 email is direct documentary evidence that his characterization of Plaintiff's post as "unsettling" and his filing of a misconduct report were not based on the academic content of the post but on assumptions about Plaintiff rooted in Plaintiff's race.

**6.** On a separate occasion, involving a separate assignment, Dr. Weaver accused Plaintiff of plagiarism. This accusation was unrelated to the February 7 discussion post and arose in connection with a different course assignment. Plaintiff immediately provided documentation establishing the originality of his work. Dr. Weaver retracted the plagiarism accusation the same night. This was not a misunderstanding corrected through normal academic process — it was a second reflexive false accusation against Plaintiff, on a second separate occasion, retracted only after Plaintiff produced documentation proving the accusation was false. No similar accusation was made against any non-Black student in the course during the same period, including Student Hugo Coffinieres, who fabricated quotations from an unassigned text, attributed false page

numbers, and submitted work containing demonstrable academic dishonesty — and received no response from Dr. Weaver.

**7.** Taken together, these two incidents — the misogyny characterization and the plagiarism accusation — constitute a documented pattern: Dr. Weaver made two separate false accusations against Plaintiff on two separate occasions involving two separate assignments, and retracted both accusations only when confronted with documentation. In the same course and during the same period, Dr. Weaver made no similar accusations against any non-Black student, including students who used identical language or submitted work containing actual academic dishonesty. This pattern is not consistent with neutral academic enforcement. It is consistent with a faculty member who applies a different standard of scrutiny, suspicion, and assumption to a Black student than to non-Black students in the same course.

**8.** Upon information and belief, Dr. Weaver's conduct reflects a predisposition to assume negative intent, dishonesty, and misconduct on the part of Black students — a predisposition demonstrated by the consistent pattern of reflexive false accusations followed by retraction upon confrontation with documented facts. Dr. Weaver assumed Plaintiff's contextually appropriate academic language reflected misogyny. Dr. Weaver assumed Plaintiff's original academic work reflected plagiarism. In both instances, Dr. Weaver's assumption was wrong, and in both instances, Dr. Weaver retracted only when Plaintiff provided documentation. No similar assumptions were made about any non-Black student in the course, including students who used identical language or submitted academically dishonest work without consequence. This pattern is consistent with, and constitutes evidence of, racial stereotyping — the application of negative assumptions about Black individuals to Plaintiff's conduct without factual basis — actionable under 42 U.S.C. §§ 1981 and 1983 and Title VI of the Civil Rights Act of 1964.

**8a.** In addition to the foregoing acts of discrimination by Dr. Weaver, Plaintiff was subjected to retaliatory grading by Defendant Prof. Emily Davis in SPAN 355 (Intro to Spanish Translation) during the Fall 2025 academic term — immediately following Plaintiff's filing of an EEOC complaint arising from Dr. Weaver's discriminatory conduct. Despite earning 92.38% on portfolio assignments and 96.06% on discussion assignments — both A-range scores — Plaintiff received a final course grade of 73.89% (C+), driven by anomalously low scores on objective graded components. This retaliatory grading constitutes a separate and independent violation of Plaintiff's rights, as more fully alleged herein.

## II. JURISDICTION AND VENUE

**9.** This Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 over Plaintiff's claims arising under 42 U.S.C. §§ 1983 and 1981, Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d), the Age Discrimination Act of 1975 (42 U.S.C. §§ 6101-6107), and the Americans with Disabilities Act (42 U.S.C. § 12132).

**10.** This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**11.** Venue is proper in the Eugene Division of the District of Oregon pursuant to 28 U.S.C. § 1391(b) because Oregon State University is located in Corvallis, Benton County, Oregon, which falls within the geographic jurisdiction of this Division, and because all acts and omissions giving rise to this complaint occurred in Benton County, Oregon.

## III. PARTIES

**12.** Plaintiff Edward Leon Guy III is an Afro-descendant, 100% service-connected disabled United States Marine Corps veteran and a non-traditional student enrolled at Oregon State University e-campus, pursuing a degree in Spanish. Plaintiff holds advanced degrees (M.E., J.D.) and has resided outside the United States since 2021. Plaintiff currently resides at Volcán No. 1090, Col. Playas de Tijuana, C.P. 22504, Tijuana, Baja California, México. Plaintiff suffered a cardiac event in September 2025 and has significant mobility impairment as a result of his service-connected disabilities.

**13.** Defendant Oregon State University (OSU) is a public university organized under the laws of the State of Oregon, located at Corvallis, Oregon 97331. OSU receives substantial federal financial assistance and is subject to Title VI of the Civil Rights Act of 1964, the Age Discrimination Act of 1975, and the Americans with Disabilities Act.

**14.** Defendant Dr. Damien Weaver, PhD, is, and was at all relevant times, a faculty member in the School of Writing, Literature & Film at OSU, Moreland Hall 300, Corvallis, Oregon. He is sued in both his individual and official capacities.

**15.** Defendant Roni Sue is, and was at all relevant times, an Intake & Assessment Associate at OSU's Equal Opportunity and Access office, 330 Snell Hall, Corvallis, Oregon. She is sued in both her individual and official capacities.

**16.** Defendant Carol Millie is, and was at all relevant times, Assistant Dean of Students at OSU. She is sued in both her individual and official capacities.

**17.** Defendant Tim Jensen is, and was at all relevant times, Director of the School of Writing, Literature & Film at OSU. He is sued in both his individual and official capacities.

**18.** Defendant Jade Silver is, and was at all relevant times, Assistant Director of the OSU Office of Financial Aid, 218 Kerr Administration, Corvallis, Oregon. She is sued in both her individual and official capacities.

**19.** Defendant Brian Hultgren is, and was at all relevant times, Senior Associate Director — Compliance, OSU Office of Financial Aid. He is sued in both his individual and official capacities.

**20.** Defendant Prof. Emily Davis is, and was at all relevant times, a faculty member at Oregon State University e-campus, and the instructor of record for SPAN 355 — Intro to Spanish Translation (SPAN_355_400_F2025) during the Fall 2025 academic term. She is sued in both her individual and official capacities.

## IV. FACTUAL ALLEGATIONS

### A. Background and Plaintiff's Standing as a Student

**21.** Plaintiff Edward Leon Guy III enrolled at Oregon State University e-campus as a non-traditional student pursuing a degree in Spanish. Plaintiff is an Afro-descendant, 100% service-connected disabled United States Marine Corps veteran, 66 years of age at the time of the events described herein, and holds advanced degrees (M.E., J.D.). Plaintiff has resided in Mexico since 2021 and attended OSU entirely through its online e-campus platform.

**22.** Plaintiff was enrolled in ENG 104, a writing course taught by Defendant Dr. Damien Weaver through OSU's e-campus platform during the Winter 2025 academic term.

**23.** At all relevant times, Plaintiff was in good academic standing, meeting all course requirements, and engaging with course materials in a formal, academically appropriate manner.

### B. Plaintiff's Exemplary Academic Performance

**24.** Plaintiff's discussion board posts were consistently the most formally written submissions in the course. Plaintiff used zero first-person pronouns, zero contractions, and language drawn entirely from assigned course texts and the historical period depicted in those texts.

**25.** Defendant Weaver himself acknowledged Plaintiff's academic quality in writing on February 18, 2025, stating: "You did a great job with your commentary on the discussion board, as I expected you would." This written acknowledgment was made eleven days after Defendant Weaver filed a misconduct report against Plaintiff based on that same discussion board post.

**25a.** Plaintiff has taken 28 courses at Oregon State University and received 26 A's, one A-, and one C+. The C+ was received in SPAN 355, taught by Defendant Prof. Emily Davis, in Fall 2025. Plaintiff's 26 A's and 1 A- in all other courses demonstrate consistent excellence across diverse course subjects and formats, making the C+ in SPAN 355 a statistical outlier inconsistent with Plaintiff's established academic ability and performance.

### C. The Discussion Board Post — February 7, 2025

**26.** On February 7, 2025, Plaintiff posted a discussion board response in ENG 104 analyzing John Updike's "A&P" and Jamaica Kincaid's "Girl." Plaintiff's post used period-accurate, historically contextual language drawn directly from the assigned texts, including terms reflecting the social norms and vernacular of the 1960s era depicted in the assigned readings.

**27.** On the same date and in the same discussion thread, student Baylie Bucher, a non-Black student, opened her post with the word "slut" — a direct quotation from Jamaica Kincaid's assigned story "Girl." Defendant Weaver took no disciplinary action against Baylie Bucher.

Defendant Weaver did not contact her, did not characterize her post as "unsettling," and did not file a misconduct report regarding her use of that language.

**28.** On February 7, 2025, Defendant Weaver emailed Plaintiff characterizing Plaintiff's academically grounded post as "unsettling" and demanded a Zoom meeting with Plaintiff.

**29.** On or about February 7, 2025, Defendant Weaver filed a student misconduct report against Plaintiff with OSU administration based on Plaintiff's discussion board post — before Plaintiff had any opportunity to respond, explain, or be heard.

**D. Disparate Treatment — Discussion Board Comparators**

**30.** Student Hugo Coffinieres, during the same academic term, posted on the discussion board about a book that was not assigned in the course and included fabricated quotations — quotes that do not exist in any real text — with false page numbers. Defendant Weaver took no disciplinary action against Hugo Coffinieres, did not contact him, did not call his post "unsettling," and did not file any misconduct report.

**31.** Neither Baylie Bucher nor Hugo Coffinieres — both of whom engaged in objectively more problematic discussion board conduct — faced any consequences from Defendant Weaver. Only Plaintiff, the oldest and the only Black male student in the course, was subjected to a misconduct report.

**32.** The course had 32 students. Plaintiff was the most formally written student in the class, focused exclusively on the assigned text, and was nonetheless the only student singled out by Defendant Weaver for disciplinary action.

**33.** Upon information and belief, Defendant Weaver did not review the substance of Plaintiff's discussion board post against the standard he applied to other students in the course —

a standard that would have required comparing Plaintiff's post to Baylie Bucher's post (which opened with a direct quotation of the word "slut" from the assigned text) and Hugo Coffinieres's post (which contained fabricated quotations from an unassigned text with false page numbers). Defendant Weaver's selective enforcement of academic standards against Plaintiff, and his failure to apply any enforcement against non-Black students engaging in objectively more problematic conduct, reflects a racially discriminatory application of academic norms.

**E. EOA Complaint and Investigation**

**34.** Following the misconduct report, Plaintiff filed a discrimination complaint with OSU's Equal Opportunity and Access office (EOA) alleging race discrimination and disparate treatment.

**35.** Defendant Roni Sue, the Intake & Assessment Associate assigned to Plaintiff's EOA complaint, dismissed the complaint without investigating the core disparate treatment allegations.

**36.** OSU's EOA office failed to investigate: (a) whether Defendant Weaver applied the same standards to Baylie Bucher and Hugo Coffinieres as he applied to Plaintiff; (b) whether Defendant Weaver's characterization of Plaintiff's post as "unsettling" was consistent with his characterization of similar or more problematic posts by non-Black students; or (c) whether the pattern of conduct reflected racial stereotyping or implicit bias.

**37.** OSU's deliberate indifference to Plaintiff's discrimination complaint, as evidenced by the failure to investigate the core disparate treatment issues, constitutes deliberate indifference to known discrimination and creates independent institutional liability.

### F. Financial Aid Administrative Error and Discriminatory Documentation Requirements

**38.** During the relevant period, OSU's Office of Financial Aid, through Defendant Jade Silver, sought to impose an administrative loan correction on Plaintiff's account based on an OSU administrative error — not any action or omission by Plaintiff.

**39.** Defendant Silver required Plaintiff to obtain physician certification from a physician physically located in the United States as a condition of resolving the administrative loan error. This requirement is not mandated by 34 C.F.R. Part 685 and constitutes an OSU policy overlay with no basis in federal law.

**40.** Plaintiff has resided outside the United States since 2021 and receives medical care through physicians in Mexico and through the United States Department of Veterans Affairs. The US-only physician requirement imposed a disproportionate burden on Plaintiff as a disabled veteran residing internationally and had no basis in applicable federal loan regulations.

**41.** Defendant Brian Hultgren, Senior Associate Director — Compliance, OSU Office of Financial Aid, was involved in the decision to impose and maintain the US-only physician requirement and failed to provide a reasonable modification despite the availability of reasonable alternatives.

**42.** Defendant Silver further threatened to retroactively cancel Plaintiff's loans, reverse payments already made, and create a balance Plaintiff would be required to repay — all as a consequence of OSU's own administrative error — compounding the discriminatory burden on Plaintiff.

### G. Retaliatory Grading by Prof. Emily Davis in SPAN 355 (Fall 2025)

**43.** Following Plaintiff's filing of an EEOC complaint arising from Dr. Weaver's discriminatory conduct in ENG 104, Plaintiff enrolled in SPAN 355 — Intro to Spanish Translation, taught by Defendant Prof. Emily Davis, during the Fall 2025 academic term.

**44.** OSU received notice of Plaintiff's EEOC complaint, and that complaint was a matter of institutional record at the time Plaintiff enrolled in SPAN 355.

**45.** Defendant Davis assigned Plaintiff a final course grade of 73.89% (C+) in SPAN 355 during the Fall 2025 academic term.

**46.** Plaintiff earned 92.38% on portfolio assignments and 96.06% on discussion assignments in SPAN 355 — both A-range scores demonstrating clear Spanish translation competency.

**47.** Despite Plaintiff's A-range scores on subjective assignments, Plaintiff received 54.02% on tests and 29.29% on the Final Translation, driving his final grade to 73.89% (C+).

**48.** Plaintiff was assigned a score of 0/50 on the Final Translation (Semana 10: Traducción Final) despite documented submission of the assignment.

**49.** The pattern of high subjective scores and anomalously low objective scores in SPAN 355 is not consistent with neutral and impartial grading. A student who earns 96.06% on discussion assignments requiring advanced Spanish language comprehension, translation theory application, and academic argumentation cannot reasonably be expected to simultaneously earn 29.29% on a Final Translation assignment testing the same competencies.

**50.** Plaintiff's C+ in SPAN 355 is inconsistent with his performance in all other 27 OSU courses, in which he received 26 A's and 1 A-. This statistical disparity, combined with the

temporal proximity to Plaintiff's EEOC filing and the internal grading inconsistencies within SPAN 355, establishes a retaliatory motive.

## V. CLAIMS FOR RELIEF

### CLAIM ONE — 42 U.S.C. § 1983: First Amendment Retaliation

(Against Dr. Weaver, individually and in his official capacity; and against OSU)

**51.** Plaintiff incorporates all allegations hereinabove just as if they were plead in full herein-below.

**52.** Plaintiff engaged in constitutionally protected activity by asserting his legal rights in response to Defendant Weaver's characterization of his discussion board post and by filing a discrimination complaint with OSU's EOA office.

**53.** Defendant Weaver used Plaintiff's assertion of legal rights as additional grounds for a pre-filed student misconduct report, characterizing Plaintiff's constitutionally protected legal notice as "intimidation."

**54.** Defendant Weaver's actions constituted adverse action against Plaintiff sufficient to deter a person of ordinary firmness from continuing to engage in protected activity.

**55.** There is a causal connection between Plaintiff's protected activity and Defendant Weaver's adverse action.

**56.** OSU's failure to remedy Defendant Weaver's retaliatory conduct, and its deliberate indifference to the pattern of retaliation through the EOA dismissal, constitute independent First Amendment violations and institutional liability under Monell.

**57.** As a direct and proximate result, Plaintiff suffered damages including loss of educational opportunity, emotional distress, and harm to his academic standing.

**CLAIM TWO — 42 U.S.C. § 1983: Fourteenth Amendment Due Process Violation**

(Against Dr. Weaver and OSU)

**58.** Plaintiff incorporates all allegations hereinabove just as if they were plead in full herein-below.

**59.** Plaintiff has a protected property and liberty interest in his continued enrollment at OSU and his academic record.

**60.** Defendant Weaver unilaterally attempted to remove Plaintiff from ENG 104 without any prior notice, hearing, or opportunity to be heard — in direct violation of OSU's own policies and the constitutional requirements of procedural due process.

**61.** OSU's failure to provide Plaintiff with due process protections before the misconduct report was filed and acted upon constitutes a Fourteenth Amendment due process violation.

**62.** As a direct and proximate result, Plaintiff suffered damages including loss of educational opportunity, emotional distress, and reputational harm.

**CLAIM THREE — 42 U.S.C. § 1981: Race Discrimination**

(Against Dr. Weaver, individually and in his official capacity; and against OSU)

**63.** Plaintiff incorporates all allegations hereinabove just as if they were plead in full herein-below.

**64.** 42 U.S.C. § 1981 guarantees all persons the same right to make and enforce contracts, including the right to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.

**65.** Plaintiff's enrollment at OSU constitutes a contractual relationship protected by 42 U.S.C. § 1981.

**66.** Defendant Weaver intentionally discriminated against Plaintiff on the basis of race by applying different academic standards, filing a misconduct report based on conduct for which non-Black students faced no consequence, and making racially motivated false accusations of plagiarism.

**67.** OSU's deliberate indifference to Defendant Weaver's racially discriminatory conduct, as evidenced by the EOA dismissal without meaningful investigation, constitutes intentional race discrimination for purposes of institutional liability under 42 U.S.C. § 1981.

**68.** As a direct and proximate result, Plaintiff suffered damages including loss of educational opportunity, emotional distress, and reputational harm.

**CLAIM FOUR — Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d)**

(Against OSU)

**69.** Plaintiff incorporates all allegations hereinabove just as if they were plead in full herein-below.

**70.** OSU receives substantial federal financial assistance and is subject to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d.

**71.** Title VI prohibits discrimination on the basis of race, color, and national origin in programs or activities receiving federal financial assistance.

**72.** OSU's deliberate indifference to Defendant Weaver's racially discriminatory conduct — as evidenced by the EOA dismissal without meaningful investigation of the core disparate treatment allegations — constitutes a violation of Title VI.

**73.** As a direct and proximate result, Plaintiff suffered damages including loss of educational opportunity, emotional distress, and reputational harm.

**CLAIM FIVE — Age Discrimination Act of 1975 (42 U.S.C. §§ 6101-6107)**

(Against OSU)

**74.** Plaintiff incorporates all allegations hereinabove just as if they were plead in full herein-below.

**75.** The Age Discrimination Act of 1975, 42 U.S.C. §§ 6101-6107, prohibits discrimination on the basis of age in programs or activities receiving federal financial assistance.

**76.** Plaintiff was 66 years of age at the time of the events described herein and was the oldest student in ENG 104.

**77.** Defendant Weaver's selective disciplinary action against Plaintiff — the oldest and only Black male student in the course — while taking no action against younger non-Black students engaging in objectively more problematic conduct, reflects age discrimination as evidenced by the complete absence of any similar treatment directed at younger, non-Black students engaging in identical academic conduct.

**78.** OSU's EOA dismissed Plaintiff's complaint without addressing the age discrimination basis, constituting deliberate indifference to Plaintiff's age discrimination claim.

**79.** As a direct and proximate result, Plaintiff suffered damages including loss of educational opportunity, emotional distress, and reputational harm.

**80.** Plaintiff incorporates all allegations hereinabove just as if they were plead in full herein-below.

**81.** Plaintiff was 66 years of age at the time of the events described herein.

**82.** Defendant Weaver's selective disciplinary action against Plaintiff, the oldest student in the course, while taking no action against younger non-Black students engaging in objectively more problematic conduct, reflects age discrimination.

**83.** OSU's EOA dismissed Plaintiff's complaint without addressing the age discrimination basis, constituting deliberate indifference to Plaintiff's age discrimination claim.

**84.** As a direct and proximate result, Plaintiff suffered damages including loss of educational opportunity, emotional distress, and reputational harm.

**CLAIM SIX — ORS § 659.850: Oregon Education Discrimination**

(Against OSU)

**85.** Plaintiff incorporates all allegations hereinabove just as if they were plead in full herein-below.

**86.** Plaintiff was 66 years of age at the time of the events described herein and was the oldest student in ENG 104.

**87.** Defendant Weaver's selective disciplinary action against Plaintiff — the oldest and only Black male student in the course — while taking no action against younger non-Black students, reflects age discrimination as evidenced by the complete absence of any similar treatment directed at younger, non-Black students engaging in identical academic conduct.

**88.** OSU's EOA dismissed Plaintiff's complaint without addressing the age discrimination basis, constituting deliberate indifference to Plaintiff's age discrimination claim.

**89.** As a direct and proximate result, Plaintiff suffered damages including loss of educational opportunity, emotional distress, and reputational harm.

**90.** Plaintiff incorporates all allegations hereinabove just as if they were plead in full herein-below.

**91.** Plaintiff was 66 years of age at the time of the events described herein.

**92.** Defendant Weaver's selective disciplinary action against Plaintiff, the oldest student in the course, while taking no action against younger non-Black students engaging in objectively more problematic conduct, reflects age discrimination.

**93.** OSU's EOA dismissed Plaintiff's complaint without addressing the age discrimination basis, constituting deliberate indifference to Plaintiff's age discrimination claim.

**94.** As a direct and proximate result, Plaintiff suffered damages including loss of educational opportunity, emotional distress, and reputational harm.

**95.** Plaintiff incorporates all allegations hereinabove just as if they were plead in full herein-below.

**96.** Plaintiff was 66 years of age at the time of the events described herein and was the oldest student in ENG 104.

**97.** Defendant Weaver's selective disciplinary action against Plaintiff — the oldest and only Black male student in the course — while taking no action against younger non-Black students engaging in identical or more problematic conduct, reflects age discrimination as

evidenced by the complete absence of any similar treatment directed at younger, non-Black students engaging in identical academic conduct.

**98.** OSU's EOA dismissed Plaintiff's complaint without addressing the age discrimination basis, constituting deliberate indifference to Plaintiff's age discrimination claim.

**99.** OSU's EOA dismissed Plaintiff's complaint without addressing the age discrimination basis, constituting deliberate indifference to Plaintiff's age discrimination claim.

**100.** As a direct and proximate result, Plaintiff suffered damages including loss of educational opportunity, emotional distress, and reputational harm.

**CLAIM SIX — ORS § 659.850: Oregon Education Discrimination**

(Against OSU)

**101.** Plaintiff incorporates all allegations hereinabove just as if they were plead in full herein-below.

**102.** ORS § 659.850 prohibits discrimination in education on the basis of race, age, disability, and other protected characteristics.

**103.** OSU's conduct as described herein constitutes unlawful discrimination in education on the basis of Plaintiff's race, age, and disability in violation of ORS § 659.850.

**CLAIM SEVEN — Breach of Contract**

(Against OSU)

**104.** Plaintiff incorporates all allegations hereinabove just as if they were plead in full herein-below.

**105.** OSU's student handbook, academic policies, and enrollment agreement constitute a binding contract between OSU and Plaintiff.

**106.** OSU's policies expressly provide for due process protections before a student may be removed from a course or subjected to disciplinary action.

**107.** Dr. Weaver's constructive removal attempt without any process, OSU's failure to remedy that conduct, and OSU Financial Aid's attempt to charge Plaintiff for OSU's own administrative error constitute material breaches of OSU's contractual obligations to Plaintiff.

**108.** As a direct and proximate result, Plaintiff suffered damages.

**CLAIM EIGHT — Defamation Per Se**

(Against Dr. Weaver, individually)

**109.** Plaintiff incorporates all allegations hereinabove just as if they were plead in full herein-below.

**110.** Dr. Weaver's written characterization of Plaintiff as a "misogynist" in his February 8, 2025 email constitutes a false statement of fact.

**111.** This statement was published to third parties, including Carol Millie, Tim Jensen, and OSU administration, through Dr. Weaver's subsequent communications and misconduct report.

**112.** The statement is defamatory per se as it falsely imputes to Plaintiff conduct incompatible with his profession and standing as a student and professional.

**113.** Dr. Weaver made this statement with actual malice — knowing it was false or with reckless disregard for its truth or falsity — as evidenced by the absence of any factual basis for the characterization.

**114.** As a direct and proximate result, Plaintiff suffered reputational harm, emotional distress, and damage to his academic and professional standing.

**CLAIM NINE — Intentional Infliction of Emotional Distress**

(Against Dr. Weaver, Hultgren and Silver individually and in their official capacities)

**115.** Plaintiff incorporates all allegations hereinabove just as if they were plead in full herein-below.

**116.** Dr. Weaver's conduct — including the false misogynist characterization, constructive removal attempt, use of Plaintiff's protected legal notice as grounds for a misconduct report, false plagiarism accusation subsequently retracted within hours, and systematic exclusion of Plaintiff from peer academic engagement — constitutes extreme and outrageous conduct beyond the bounds of decency tolerated in a civilized society or in any public institution of higher education.

**117.** Dr. Weaver intended to cause, or acted with reckless disregard of the probability of causing, severe emotional distress to Plaintiff.

**118.** As a direct and proximate result of Dr. Weaver's extreme and outrageous conduct, Plaintiff suffered severe emotional distress, including anxiety, humiliation, loss of academic confidence, and aggravation of pre-existing service-connected disabilities. Plaintiff, a 100% service-connected disabled USMC veteran, is particularly vulnerable to emotional harm, a fact that was or should have been known to Dr. Weaver given Plaintiff's disclosed veteran status. Dr. Weaver's conduct was not merely negligent; it was deliberate, targeted, and sustained over the course of the term.

**CLAIM TEN — Negligent Infliction of Emotional Distress**

(Against OSU and Defendants Weaver, Silver and Hultgren individually and in their official capacities)

**119.** Plaintiff incorporates all allegations hereinabove just as if they were plead in full herein-below.

**120.** Dr. Weaver owed Plaintiff a duty of care as his enrolled student and as a member of the OSU academic community.

**121.** Dr. Weaver breached that duty by engaging in the conduct described hereinabove.

**122.** When Dr. Weaver performed the acts described hereinabove, he breached his duty of care to Plaintiff, and said acts were the actual and proximate cause of Plaintiff's emotional distress and damages.

**CLAIM ELEVEN — Americans with Disabilities Act, Title II (42 U.S.C. § 12132)**

(Against OSU and Defendants Weaver, Silver and Hultgren individually and in their official capacities)

**123.** Plaintiff incorporates all allegations hereinabove just as if they were plead in full herein-below.

**124.** Title II of the ADA prohibits any public entity from excluding a qualified individual with a disability from participation in, or denying the benefits of, the services, programs, or activities of the public entity, or subjecting such individual to discrimination on the basis of disability. 42 U.S.C. § 12132.

**125.** OSU is a public entity within the meaning of 42 U.S.C. § 12131(1).

**126.** Plaintiff is a qualified individual with a disability within the meaning of 42 U.S.C. § 12131(2). Plaintiff is a 100% service-connected disabled USMC veteran whose disabilities have been adjudicated and certified by the United States Department of Veterans Affairs.

**127.** OSU's Office of Financial Aid, through Defendant Silver, required Plaintiff to obtain physician certification from a physician physically located in the United States as a condition of resolving the administrative loan error. This requirement is not mandated by 34 C.F.R. Part 685 and constitutes an OSU policy overlay with no basis in federal law.

**128.** The US-only physician requirement disproportionately burdens Plaintiff as a disabled veteran residing internationally. Plaintiff has resided outside the United States since 2021 and receives medical care through physicians in Mexico and through the United States Department of Veterans Affairs. OSU made no effort to provide a reasonable modification despite the availability of reasonable alternatives.

**129.** Defendant Silver further threatened to retroactively cancel Plaintiff's loans, reverse payments already made, and create a balance Plaintiff would be required to repay — all as a consequence of OSU's own administrative error — compounding the discriminatory burden on Plaintiff.

**130.** OSU's failure to provide a reasonable modification and its imposition of a discriminatorily applied documentation requirement constitutes discrimination on the basis of disability in violation of Title II of the ADA.

**131.** As a direct and proximate result, Plaintiff suffered damages including financial harm, emotional distress, and interference with his educational opportunities.

**CLAIM TWELVE — 42 U.S.C. § 1983: Retaliation for Protected Activity (SPAN 355 / EEOC)**

(Against Prof. Emily Davis, individually and in her official capacity; and against OSU)

**132.** Plaintiff incorporates all allegations hereinabove just as if they were plead in full herein-below.

**133.** Plaintiff engaged in constitutionally and federally protected activity by filing an EEOC complaint arising from the racially discriminatory and retaliatory conduct of Defendant Dr. Damien Weaver in ENG 104 during the Winter 2025 academic term. The filing of an EEOC complaint is protected activity under the First and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §§ 1981 and 1983. OSU received notice of Plaintiff's EEOC complaint, and that complaint was a matter of institutional record at the time Plaintiff enrolled in SPAN 355.

**134.** Defendant Prof. Emily Davis, acting under color of state law and in her official capacity as a faculty member at Oregon State University, assigned Plaintiff a final course grade of 73.89% (C+) in SPAN 355 during the Fall 2025 academic term. This grade constitutes an adverse academic action that materially and adversely affected Plaintiff's academic standing, his academic record, and his progress toward completion of his undergraduate degree in Spanish.

**135.** The causal connection between Plaintiff's protected activity and Defendant Davis's retaliatory grading is established by: (a) temporal proximity — Plaintiff enrolled in SPAN 355 in the Fall 2025 term immediately following the filing and institutional dismissal of his EEOC complaint; (b) the anomalous grade pattern — Plaintiff earned 92.38% on portfolios and 96.06% on discussions, demonstrating clear Spanish translation competency, yet received 54.02% on tests and 29.29% on the Final Translation; (c) the inconsistency between Plaintiff's SPAN 355

grade and his performance in 27 other OSU courses (26 A's, 1 A-); (d) the assignment of a score of 0/50 on the Final Translation despite documented submission of the assignment; and (e) the institutional context of ongoing discrimination and retaliation against Plaintiff by OSU faculty and staff.

**136.** The pattern of high subjective scores and anomalously low objective scores in SPAN 355 is not consistent with neutral and impartial grading. A student who earns 96.06% on discussion assignments requiring advanced Spanish language comprehension, translation theory application, and academic argumentation cannot reasonably be expected to simultaneously earn 29.29% on a Final Translation assignment testing the same competencies. This disparity is consistent with retaliatory grading: an instructor who was aware of Plaintiff's protected activity, and who wished to suppress Plaintiff's grade in retaliation for that activity, would have difficulty awarding low scores on visible, subjective work of documented high quality, but could more readily manipulate scores on objective components where the grading rationale is less apparent.

**137.** Defendant Davis acted under color of state law at all relevant times, exercising authority vested in her by OSU as a faculty member with grading authority over enrolled students.

**138.** Defendant OSU, through its deliberate indifference to the pattern of retaliatory conduct against Plaintiff by its employees — including the dismissal of Plaintiff's EEOC complaint without meaningful investigation and the failure to take any corrective action following that dismissal — ratified and perpetuated the retaliatory conduct of Defendant Davis and is independently liable for that conduct.

**139.** As a direct and proximate result of Defendant Davis's retaliatory grading and OSU's deliberate indifference, Plaintiff suffered damages including interference with his educational

progress and degree completion, harm to his academic record, emotional distress, reputational harm, and aggravation of pre-existing service-connected disabilities.

## PRAYER FOR RELIEF

Plaintiff Edward Leon Guy III respectfully requests that this Court enter judgment in his favor and against Defendants, and award the following relief:

**1. Compensatory Damages**

Award Plaintiff compensatory damages in an amount to be proven at trial, but no less than $250,000, for loss of educational opportunity, emotional distress, reputational harm, financial harm, and aggravation of pre-existing service-connected disabilities. Damages shall include compensation for the adverse academic consequences flowing from Defendant Davis's retaliatory grading in SPAN 355, including harm to Plaintiff's academic record and interference with his progress toward completion of his undergraduate degree in Spanish.

**2. Punitive Damages**

Award Plaintiff punitive damages against Defendants Dr. Weaver, Silver, Hultgren, and Prof. Emily Davis, individually, in an amount sufficient to punish their willful, malicious, and outrageous conduct and to deter similar conduct in the future.

**3. Injunctive Relief**

Order OSU to:

- (a) Expunge the misconduct report filed by Dr. Weaver from Plaintiff's academic record;
- (b) Issue a formal written apology to Plaintiff;
- (c) Implement mandatory anti-discrimination and implicit bias training for all faculty and Financial Aid staff;
- (d) Reform the EOA complaint process to require meaningful investigation of disparate treatment claims;
- (e) Audit Canvas engagement patterns for evidence of racially disparate faculty engagement;
- (f) Revise Financial Aid disability documentation requirements to comply with 34 C.F.R. Part 685 and eliminate any US-only physician requirement not mandated by federal law;
- (g) Conduct a full and impartial review of Plaintiff's final grade in SPAN 355 (SPAN_355_400_F2025, Fall 2025), including an independent evaluation of the Final Translation assignment (Semana 10: Traducción Final) to which Plaintiff was assigned a score of 0/50 despite documented submission; and
- (h) Permit Plaintiff to re-enroll in and complete the remaining courses required for his undergraduate degree in Spanish, including individual study and internship courses, without discrimination, retaliation, or interference.

**4. Declaratory Relief**

Enter a declaration that Defendants' conduct violated the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1981 and 1983, Title VI

of the Civil Rights Act of 1964, the Age Discrimination Act of 1975, Title II of the Americans with Disabilities Act, and Oregon state law; and that Defendant Davis's retaliatory grading in SPAN 355 constituted unlawful retaliation for Plaintiff's protected activity in violation of 42 U.S.C. § 1983.

**5. Costs; Fees and Legal Expenses**

Award Plaintiff his costs of suit. Plaintiff is a 100% service-connected disabled USMC veteran exempt from court costs pursuant to applicable federal law. Plaintiff further requests an award of reasonable attorney's fees and legal expenses pursuant to 42 U.S.C. § 1988 for all claims brought under 42 U.S.C. §§ 1981 and 1983, and pursuant to 42 U.S.C. § 2000d-7 for claims brought under Title VI of the Civil Rights Act of 1964.

**6. Such Other Relief**

Grant such other and further relief as this Court deems just and proper.

Respectfully Submitted

Dated: September 5, 2026

/s/ Edward Leon Guy III
Edward Leon Guy III
Plaintiff in pro se

**VERIFICATION**

I the undersigned, certify and declare that I have read the foregoing Second Amended Complaint for Damages. I am the plaintiff in the action herein. The matters stated in the document described

herein above are true of my own knowledge and belief except as to those matters stated on information and belief, and as to those matters I believe them to be true as well.

Executed on September 5, 2026. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Dated: September 5, 2026, 2026

/s/ Edward Leon Guy III
Edward Leon Guy III,
Plaintiff in pro se